IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMBER L. L.,[1]

             Plaintiff,                                 Civ. No. 6:21-cv-01097-MC

       v.                                      OPINION AND ORDER

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

             Defendant.

_____

MCSHANE, Judge:

      Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On May 14, 2019, Plaintiff applied for supplemental security income, alleging a disability onset date as of January 15, 2008. Tr. 15.[2] Plaintiff's application was denied on September 27, 2019, and denied upon reconsideration on June 17, 2020. *Id.* At a hearing with an administrative law judge ("ALJ") on February 3, 2021, Plaintiff amended her alleged onset date to May 30, 2019. *Id.* The ALJ determined that Plaintiff was not disabled under the Social Security Act. Tr. 23. Plaintiff requested review by the Appeals Council, which declined to review the ALJ's decision. Tr. 1. Plaintiff now appeals to the district court.

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1  – OPINION AND ORDER

Plaintiff argues that the ALJ erred by (1) "improperly reject[ing] Plaintiff's subjective symptom testimony" and (2) "improperly reject[ing] a medical source opinion." Pl.'s Br. 3. For the reasons below, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

## BACKGROUND

Plaintiff was born with Madelung's Deformity, a rare developmental bone deformity of the wrist. *See* Tr. 54. In an x-ray taken on June 16, 2020, both of Plaintiff's wrists presented with a "deformity of the distal radius and ulna compatible with Madelung deformity, with slight proximal prominence of the lunate and relative V-shaped appearance of the proximal carpal row." Tr. 681. Plaintiff has experienced wrist pain her entire life because of this deformity, and it has continued to progress with age. Tr. 46, 54.

In August of 2007, Plaintiff began working part-time at Bill's Oak Grove Gas and Food Mart as a cashier and gas attendant. Tr. 189. By January 2008, Plaintiff could no longer work because her job duties, which included operating a register and pumping gas, caused significant pain in her wrists. Tr. 42, 189. Plaintiff has not held another job since that time. Tr. 42.

Beginning in the Summer of 2018, Plaintiff has lived in a communal clean and sober house with her two minor children, where she serves as house manager.[3] Tr. 42, 215. Plaintiff receives a $150 per month discount on her rent in exchange for serving as house manager, and the father of Plaintiff's children pays the remaining $500 per month in rent. Tr. 39–40. Plaintiff also receives significant help with childcare from her roommates and the children's father. *Id.*

---

[3] Plaintiff's duties include collecting rent from tenants once a month and facilitating biweekly house meetings which last no longer than fifteen minutes. Tr. 40.

Because of her wrist pain, Plaintiff has difficulty completing everyday tasks such as cooking, cleaning, and driving. *Id.* Many of these tasks are performed by Plaintiff's sister. *Id.*

On June 22, 2020, Plaintiff established care with Dr. Jon David Froyd, D.O., a primary care physician. Tr. 35, 703. Dr. Froyd sees Plaintiff monthly, and he prescribes her suboxone to manage her chronic wrist pain. Tr. 703, 686. Dr. Froyd has discussed with Plaintiff whether surgery is a viable option, however, in a statement dated on November 11, 2019, Dr. Froyd opined that wrist reconstruction surgeries are usually performed on children, and he expressed doubt that surgery would now help Plaintiff as an adult. Tr. 704.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial [evidence] means more than a mere scintilla but only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (internal quotations omitted). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920. The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies their burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can perform a job that exists in sufficient numbers in the national economy considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform jobs existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step one, the ALJ found that Plaintiff has not engaged in any substantial gainful employment since the onset date of her alleged disability. Tr. 17. At step two, the ALJ found that "[Plaintiff] has the following severe impairment: Madelung's Deformity (20 CFR 416.920(c))." Tr. 17. At step three, the ALJ found that Plaintiff's impairment did not meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18.

At this step, the ALJ also formulated Plaintiff's RFC. A claimant's RFC is the most they can do despite their limitations. 20 C.F.R. § 404.1545(a). Here, the ALJ found that Plaintiff can perform "light work as defined in 20 CFR 416.967(b) except she can occasionally handle and finger with the left non-dominant hand and frequently handle and finger with the right dominant hand." Tr. 18. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 21. Finally, at step five, the ALJ determined that "there are jobs that exist in significant numbers in

the national economy that claimant can perform," such as an Investigator, Dealer Account;

Usher; Collator Operator; Order Caller; and Deliverer. Tr. 21–22.

I.    **The ALJ's Weighing of Medical Opinions**

The Ninth Circuit has clarified that under the new regulations, "the former hierarchy of

medical opinions—in which we assign presumptive weight based on the extent of the doctor's

relationship—no longer applies." *Woods*, 32 F.4th at 787. Now, an ALJ's "decision to discredit

any medical opinion, must simply be supported by substantial evidence." *Id.* "The most

important factors that the agency considers when evaluating the persuasiveness of medical

opinions are *supportability* and *consistency*." *Id.* at 791 (emphasis added) (internal quotations

omitted); 20 C.F.R. § 404.1520c(a). However, the Ninth Circuit has clarified that "the extent of

the claimant's relationship with the medical provider—what we will refer to as "relationship

factors"—remains relevant under the new regulations." *Woods*, 32 F.4th at 790.

Plaintiff contends that the ALJ did not provide substantial evidence to reject the medical

opinion of Dr. Froyd, Plaintiff's primary care provider. Pl.'s Br. 8. The Court agrees. In a

November 2020 functional limitation assessment, Dr. Froyd reported that Plaintiff suffers from

"chronic wrist pain" caused by Madelung's Deformity. Tr. 703. Dr. Froyd stated that Plaintiff's

diagnosis was confirmed both by an "orthopedic hand/wrist surgeon" as well as by x-rays which

revealed a "deformity of wrists known as Madelung's deformity." Tr. 704. He opined that in an

eight-hour workday Plaintiff could "occasionally lift less than 10 pounds" and should never lift

10 or more pounds. Tr. 705. Dr. Froyd also specified that Plaintiff should less than occasionally

use her hands to grasp, grip, and twist objects; use her fingers for fine manipulation; or use her

arms for reaching. *Id.* Further, Dr. Froyd stated that Plaintiff would require breaks after handling

or fingering, and "would be unable to perform repetitive handling or manipulation." *Id.*

Additionally, Dr. Froyd opined that Plaintiff's condition would cause her to miss four or more days of work per month. Tr. 706.

The ALJ concluded that "the medical evidence does not support nor is consistent with the limitations" opined by Dr. Froyd. Tr. 21. But the ALJ did not provide a thorough explanation or provide examples to show why Dr. Froyd's opinion was inconsistent or unsupported by the medical evidence. *See id.*

> Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

*Woods*, 32 F.4th at 792. Contrary to the requirements of 20 C.F.R. § 404.1520c(b)(2), the ALJ did not explain his finding that Dr. Froyd's opinion was inconsistent and unsupported by medical evidence. *See* Tr. 21. Instead, the ALJ provides a single sentence: "The medical evidence is consistent with the limitations discussed in Drs. Platter and Bates' opinions above, and for the same reasons discussed in Drs. Platter and Bates' opinions above." Tr. 21. This hardly meets the threshold requirement of providing substantial evidence to discredit a medical opinion.

Nevertheless, the Commissioner argues that this Court should simply infer the ALJ's reasons for rejecting Dr. Froyd's opinion based on the ALJ's previous explanation for partially accepting Dr. Platter's and Dr. Bates' opinions.[4] Def.'s Br. 7, ECF No. 13. To support his finding

---

[4] State medical consultant Dr. Howard Platter, M.D. found that Plaintiff could perform "light work with occasional lifting/carrying of 25 pounds and manipulative limitations." Tr. 20. Dr. Ramona Bates, M.D. found that Plaintiff could occasionally lift and carry 20 pounds. *Id.* The ALJ ultimately found that, in addition to the limitations opined by the State agency medical consultants, Plaintiff was also limited to "occasional handling and fingering with the left hand." Tr. 21.

that Dr. Platter's and Dr. Bates' opinions were persuasive, the ALJ cited a June 11, 2019, examination where Dr. Shane C. Kim, M.D., stated that Plaintiff's "bilateral hands showed no arthritis or deformities, normal tendon function, normal fingers, hands, and wrists" as well as "unremarkable active and passive motion and neurological exam and no point tenderness or palpable instability upon direct palpation." Tr. 21. Assuming that the ALJ meant to draw a comparison between this evidence and Dr. Froyd's findings, the Court is not convinced that Dr. Kim's assessment is persuasive nor that it sufficiently contradicts Dr. Froyd's evaluation of Plaintiff's ability to function.

First, Dr. Kim's assessment that Plaintiff does not have arthritis and shows normal tendon function, range of motion, neurological exam, fingers, and hands is somewhat irrelevant. Plaintiff's limited functioning is caused by her chronic wrist pain, not from arthritis or abnormalities in her hands and fingers. Dr. Froyd never suggests that Plaintiff suffers from symptoms other than her wrist pain. Second, Dr. Kim's note that Plaintiff had normal wrists contradicts the overwhelming evidence, confirmed by x-rays and multiple doctors, that Plaintiff suffers from Madelung's Deformity. Tr. 248, 255–56, 271–73, 275, 279, 281, 291, 295, 297, 301, 303, 305, 314, 318, 321, 361–62, 541, 563, 583, 619, 627, 630, 676, 680–83, 685, 688, 690–91, 695, 696, 698–99, 707, 712. Moreover, Dr. Kim's own examination notes on this issue are internally inconsistent. For example, he began by noting that Plaintiff suffers from Madelung's Deformity and then proceeded to opine that Plaintiff had normal wrists. Tr. 301–02. Lastly, Dr. Kim's opinion that Plaintiff had no point tenderness is inconsistent with the rest of the record, which shows that Plaintiff experienced tenderness in her wrists with direct palpation. Tr. 281, 295, 698. The Court finds Dr. Kim's opinion unpersuasive.

In sum, the ALJ recites examination results to support Dr. Platter's and Dr. Bates' findings that either contradict the record or have little bearing on Plaintiff's actual functional limitations. *See* tr. 19–20. As such, the Court does not find the ALJ's assessment of Dr. Platter's and Dr. Bates' opinions persuasive, and therefore, declines to use that assessment to draw an inference about Dr. Froyd's credibility.

Moreover, the Court finds that Dr. Froyd's limitation assessment is consistent and supported by the medical evidence, which extensively details Plaintiff's chronic pain. Tr. 248–49, 253, 271, 278–79, 281, 291, 295, 301, 303, 305, 659, 688, 711. For example, during an exam on June 28, 2019, Dr. Mark Gelfand reported that Plaintiff has a "very prominent distal ulna dorsally," and Plaintiff's "entire wrist is very tender to palpation." Tr. 281. Additionally, Dr. Geoffrey Buncke's notes from an examination on July 25, 2008, detail Plaintiff's "significant deformities on the radial aspect and a very acute radial inclination," as well as "increased pain with supination and ulnar deviation." Tr. 249–50. This evidence supports Dr. Froyd's finding that Plaintiff should severely limit the use of her wrists and refrain from lifting over ten pounds or repetitively handling and fingering. Tr. 705–06. Not only did the ALJ fail to support his rejection of Dr. Froyd's opinion with an adequate explanation, but the "inference" that the Commissioner asks this Court to draw does not support a finding that Dr. Froyd's opinion was inconsistent or unsupported by medical evidence.

The ALJ's improper rejection of Dr. Froyd's assessment was not harmless. Generally, "the decision of the ALJ will not be reversed for errors that are harmless." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). But when a court finds that the disability determination outcome would have been different if the ALJ properly credited the omitted

opinion or testimony, then the error was not harmless. *Id.* at 1055 (to be harmless, the ALJ's error must be "inconsequential to the ultimate non-disability determination").

Here, the ALJ rejected Dr. Froyd's opinion that Plaintiff (1) could lift less than 10 pounds occasionally; (2) could never lift more than 10 pounds; (3) could less than occasionally use her hand, fingers, or arms; (4) would require breaks after using her hands to finger or manipulate; and (5) would miss at least four days of work a month for medical reasons. Tr. 21. At a hearing on February 3, 2021, vocational expert Francene Geers testified that there were no jobs available in the national economy for an unskilled person who could not lift more than 10 pounds and could only finger and handle less than occasionally. Tr. 59. She also opined that someone with hand-use limitations would be unable to do sedentary work because such jobs "require frequent bilateral use of the hands." *Id.* Additionally, Ms. Geers testified that a person who is off-task twenty percent of the day or misses work more than twice a month cannot sustain any type of employment. Tr. 58. Based on Ms. Geer's testimony, if the ALJ properly credited Dr. Froyd's assessment of Plaintiff's functional limitations, the ALJ could not have concluded that Plaintiff is capable of finding a job in the national economy. Therefore, the ALJ's error was not harmless, and the Court can reverse on this error alone.

## II.    Weighing of Plaintiff's Symptom Testimony

Plaintiff also argues that the ALJ improperly rejected her subjective symptom testimony. Pl.'s Br. 3. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ determines, "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal citations and quotations omitted). If the first step is

satisfied, and the ALJ finds no evidence of malingering, the ALJ next determines the intensity

and persistence of symptoms by considering "all of the available evidence from . . . medical

sources and nonmedical sources." 20 CFR § 404.1529(c)(1). "The ALJ can reject the claimant's

testimony about the severity of her symptoms *only* by offering specific, clear and convincing

reasons for doing so." *Garrison*, 759 F.3d at 1015 (emphasis added).

    At a hearing on February 3, 2021, Plaintiff testified that Madelung's Deformity causes

functional limitations and chronic pain in her wrists. Tr. 42. She explained that when she worked

as a gas attendant and cashier in 2008, she suffered such severe wrist pain from pumping gas and

operating a cash register that she could no longer make it through a full workday. *Id.* Plaintiff

now struggles with simple tasks such as dressing herself and her children—even buttoning a shirt

causes pain in her wrists. Tr. 15. Plaintiff testified that she cannot drive because she is unable to

turn a steering wheel, and she cannot grocery shop independently because she is unable to carry

grocery bags. Tr. 48. Plaintiff can only prepare frozen food for her family because she has

trouble cutting, stirring, and cleaning pans. Tr. 47–48. Plaintiff also testified that she must rest

for up to two hours after using her hands for more than a minute or two. Tr. 44–45. Plaintiff

explained that her children's father, her roommates, and her sister help with household chores,

grocery shopping, cooking, and childcare. Tr. 47–48.

    The ALJ found that Madelung's Deformity "could reasonably be expected to cause"

Plaintiff's alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence

and limiting effects of these symptoms are not entirely consistent with the medical evidence and

other evidence in the record." Tr. 19. First, the ALJ construes Plaintiff's reports of varying levels

of pain in her wrists as evidence of inconsistency. *Id.* While Plaintiff has historically reported

increased pain in her left wrist (which is more severely deformed than the right), Plaintiff

explained at the hearing that her right wrist has been more painful recently because she overuses that wrist to compensate for the limitations of her left wrist. Tr. 54–55. The Court finds this explanation reasonable.  Nothing in Plaintiff's testimony contradicts the medical record, which shows Madelung's Deformity in both wrists with a more severe deformity in the left wrist. Tr. 281.

Second, the ALJ again highlights that at a medical appointment with Dr. Kim on June 11, 2019, Plaintiff presented with no arthritis, no evidence of dislocation or fracture, no point tenderness, normal tendon function, a normal neurological exam, normal deep tendon reflexes, and normal range of motion. Tr. 20, 301–02.  As stated above, Plaintiff has never alleged that she has arthritis, fractured or dislocated bones, or issues with tendon reflexes and range of motion. Instead, Plaintiff states that she is unable to work because of chronic pain in her wrists. A claimant alleging symptoms "need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Even so, the objective medical evidence here reflects Plaintiff's consistent reports of pain in her wrists. Tr. 248–49, 253, 271, 278–79, 281, 291, 295, 301, 303, 305, 659, 688, 711.

Third, the ALJ points to three separate occasions where Plaintiff did not report pain or problems in her wrists to support a finding that Plaintiff's symptom testimony was inconsistent. Tr. 20. First, the ALJ cites to a 2019 chart note when Plaintiff was actively in labor and requesting an epidural. Tr. 20, 593. It is unsurprising that Plaintiff failed to mention her wrist deformity while she was giving birth. The ALJ also cites to a pre-operation report from Plaintiff's 2020 sterilization procedure where she failed to mention wrist pain. Tr. 20, 563. But Plaintiff's wrists were not the focus of the sterilization procedure, nor was this a routine visit with her treating physician. The Court does not find it unusual that Plaintiff did not report her

wrist pain during this appointment. Next, the ALJ cites to a 2021 medical record where Plaintiff visited Dr. Froyd to remove a cheek piercing. Tr. 20, 715–16. The ALJ claims that the medical record detailed a normal physical examination and no issues with wrist pain. Tr. 20. However, a closer examination of the record reveals that the chart note does in fact list Plaintiff's Madelung's Deformity and chronic wrist pain as part of Dr. Froyd's "chronic pain syndrome" assessment. Tr. 715–16. In sum, the ALJ attempts to portray Plaintiff's pain testimony as inconsistent with the medical evidence by singling out unique occasions where Plaintiff received unrelated medical treatments and did not explicitly focus on her wrist pain. It is improper for an ALJ to "cherry-pick" certain facts that conflict with Plaintiff's testimony without considering them in context. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

Finally, the ALJ notes that Plaintiff had "very adequate pain relief with suboxone, topical lidocaine, and ibuprofen" to support his finding that Plaintiff's symptom testimony was inconsistent. Tr. 20. However, the ALJ discredits Plaintiff's symptom testimony based on a singular instance of documented pain relief, while ignoring the cumulative record which reflects Plaintiff's consistent reports of wrist pain. Tr. 248–49, 253, 271, 278–79, 281, 291, 295, 301, 303, 305, 659, 688, 711. Additionally, the ALJ fails to consider that Plaintiff's pain was well managed at a time when she could frequently rest her wrists and receive significant assistance to complete basic tasks. Plaintiff would not likely receive the same assistance at work to the extent she is at home nor receive the time to rest her wrists. An ALJ must consider "that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison*, 759 F.3d at 1017. The ALJ did not offer clear and convincing reasons to discredit Plaintiff's symptom testimony about her

chronic pain. A proper weighing of Plaintiff's symptom testimony with Dr. Froyd's assessment would have supported a finding that Plaintiff is disabled.

## **CONCLUSION**

The Court finds that the ALJ erred by failing to properly weigh Dr. Froyd's objective medical assessment and Plaintiff's symptom testimony. These errors were not harmless. The Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits. IT IS SO ORDERED.

DATED this 23rd day of March, 2023.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge